UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SERGEY KLIMENKO,<br><br>  Plaintiff,<br><br>v.<br><br>GLANBIA FOODS, INC. and LUIS RODRIGUEZ,<br><br>  Defendants. | Case No. 1:24-cv-00037-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court are Plaintiff Sergey Klimenko's Motion for Spoliation Sanctions (Dkt. 45); Plaintiff's Motion for Partial Summary Judgment (Dkt. 46); Defendants Glanbia Foods, Inc., and Luis Rodriguez's Motion for Summary Judgment (Dkt. 59); and Plaintiff's Motion to Amend Complaint to Add Claim for Punitive Damages (Dkt. 58). Having reviewed the record and the parties' submissions, the Court finds that oral argument would not significantly aid its decision-making process, and it decides the motions on the parties' briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). For the reasons explained below, the Court grants Plaintiff's Motion for Spoliation Sanctions; denies Plaintiff's Motion to Amend Complaint to Add Claim for Punitive Damages; and grants and denies in part both Plaintiff's Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

On June 28, 2023, Defendant Luis Rodriguez was driving a commercial truck on Interstate 84 at night when he struck the rear end of Plaintiff Sergey Klimenko's stationary pickup truck. Defendant Glanbia Foods, Inc., employed Rodriguez. Before the collision, police dispatch records contain reports of a gray or silver pickup traveling slowly on the roadway, including a report that the vehicle was "doing 10MPH on the RD" and had "no hazards" (Dkt. 45-8 at 38-39). Klimenko was in a 2020 GMC Sierra (*id.* at 4-5). The collision occurred at approximately 11:15 p.m., on a dry, straight portion of I-84 without streetlights (*id.* at 1; Dkt. 66 at 5). At the time of the impact, Klimenko's vehicle was stopped in, or mostly in, the right lane of I-84 for unknown reasons and its tail lights were lit (Dkt. 53 at 2; Dkt. 47-3).

Rodriguez's truck was equipped with a forward-facing dash camera, which recorded footage of the collision and the moments before it (Dkt. 45-9 at 1; Dkt. 53 at 2). That footage shows Klimenko's vehicle apparently stationary in the right lane of travel on the interstate (Dkt. 47-3). Another Glanbia driver, Mark Huber, was also traveling on I-84 ahead of Rodriguez that night; his truck's dash camera also captured footage of Klimenko's vehicle (Dkt. 55-1 at 7:19-8:13). That footage shows Klimenko's vehicle is stationary in the same position roughly five minutes before the collision (Dkt. 47-6). Huber moved left and avoided Klimenko's vehicle (*id.*). Rodriguez's footage also shows traffic ahead of him encountering Klimenko's stopped vehicle before Rodriguez reached it, including another driver ahead of Rodriguez moving left and avoiding Klimenko's vehicle (Dkt. 47-3).

The parties dispute what that traffic flow shows. Defendants contend the two vehicles ahead of Rodriguez obstructed his view of Klimenko's vehicle and left him insufficient time to perceive and react (Dkt. 60 at 4-5). Klimenko responds that those vehicles cleared the lane before

MEMORANDUM DECISION AND ORDER - 2

impact; Rodriguez then had an unobstructed view of Klimenko's vehicle; and the traffic ahead of Rodriguez supplied visual cues of a hazard because vehicles ahead braked, activated a left-turn signal, or changed lanes to avoid Klimenko's vehicle (Dkt. 51-1 at 62; Dkt. 51-3 at 44:1-45:11, 50; Dkt. 66 at 6-7).

Klimenko's vehicle did not have its hazard lights or turn signals on, and Klimenko had not placed cones or flares in the road (Dkt. 66 at 4). Klimenko's reconstruction expert, Joseph Stidham, likewise testified the dash-camera footage did not show hazard lights, brake lights, turn signals, cones, or flares associated with Klimenko's stopped vehicle (Dkt. 54 at 1-2).

Rodriguez's truck struck the rear of Klimenko's vehicle at approximately 64 miles per hour (Dkt. 45-9 at 1; Dkt. 53 at 2). As Rodriguez approached Klimenko's vehicle, he did not slow down, brake, or turn his steering wheel (Dkt. 53 at 3; Dkt. 47-5 at 56:19-57:8). Glanbia's Rule 30(b)(6) designee, Regina Slade, similarly testified Rodriguez "did not avoid hitting Mr. Klimenko and did not hit his brakes prior to that impact" (Dkt. 45-10 at 140:19-22). Rodriguez testified he did not expect a vehicle to be stopped in the freeway lane of travel and did not realize Klimenko's vehicle was stopped until it was too late (Dkt. 47-5 at 32:11-33:2, 42:16-19).

The Court has reviewed the footage from Rodriguez's dash-camera.[1] This footage depicts the roadway conditions, the movement of other vehicles, Rodriguez's lack of braking or steering before impact, his speed, and an illuminated object inside Rodriguez's cab. Further, the footage shows other drivers avoiding Klimenko's vehicle before Rodriguez reached it; visible tail lights or

---

[1]    Klimenko also submitted dashcam footage depicting another crash (Dkt. 66-5). Klimenko cites that footage only to dispute, without further explanation, Defendants' assertion that Rodriguez had not been involved in any other accidents after obtaining his commercial driver's license. Because Klimenko does not otherwise develop the footage's relevance to the pending motions, the Court does not treat it as material to the present rulings.

MEMORANDUM DECISION AND ORDER - 3

brake lights from vehicles ahead of Rodriguez; and the period before impact during which roadway cues were visible (Dkts. 45-9, 47-3, 47-6, 52-2, 66-2, 66-3).

Idaho State Patrol (ISP) Trooper Hansen testified that Rodriguez stated he was reaching for a beverage, which Hansen understood to be why Rodriguez did not notice Klimenko's vehicle before the collision (Dkt. 60-1 at 9). Rodriguez disputes that he was distracted; testified he reached for water; and acknowledged that, in doing so, he would have taken his eyes off the road (Dkt. 45-3 at 9:18-12:19). Rodriguez testified that he did not tell the investigating officer he was distracted (Dkt. 47-5 at 11:1-4, 12:13-17). The collision caused Klimenko's vehicle to overturn (Dkt. 45-8 at 5, 7). Klimenko was transported by air ambulance to Eastern Idaho Regional Medical Center (*id.* at 5).

## A.    Investigation, Expert Review, and Charging History

Trooper Hansen cited Rodriguez for reckless driving under Idaho Code § 49-1401(1) and completed a probable-cause affidavit, which he submitted to the Jerome County Prosecutor's Office on July 26, 2023, several weeks after the collision (Dkt. 53 at 5). Rodriguez was charged with inattentive driving under Idaho Code § 49-1401(3) on August 15, 2023, and pleaded guilty to that charge on April 7, 2025 (Dkt. 53 at 5).

The parties' accident-reconstruction experts reviewed the dash-camera footage and disagree about the available reaction time. Defendants' expert, David Cavanaugh, calculated that Klimenko's vehicle was visible to Rodriguez for 9.33 seconds before impact (Dkt. 53 at 4). Meanwhile, Klimenko's expert, Stidham, calculated that Rodriguez had 10.533 seconds and 972.52 feet after the two vehicles ahead of him cleared the right lane, with Klimenko's vehicle directly ahead and an unobstructed view (Dkt. 51-3 at 50). Stidham also opined Rodriguez had visual cues of a hazard because vehicles ahead braked, activated a left-turn signal, and changed

lanes to avoid Klimenko's vehicle (Dkt. 51-1 at 62; Dkt. 51-3 at 44:1-45:11). Cavanaugh, by contrast, opines an overwhelming majority of drivers would not have been able to avoid the collision and attributes the collision to Klimenko's vehicle being stopped in the right lane without adequate warning to approaching drivers (Dkt. 54 at 3-4).

Glanbia did not discipline Rodriguez for the crash. Slade testified, as Glanbia's designee, that she did not believe Glanbia did or failed to do anything that led to the crash and did not believe Rodriguez did or failed to do anything that contributed to the crash (Dkt. 45-10 at 15:2-18, 17:2-13). Slade also testified that, after Cavanaugh provided his report, Glanbia decided not to discipline Rodriguez (Dkt. 45-10 at 123:1-11).

Klimenko sued Rodriguez and Glanbia. He alleges "counts" against Rodriguez for negligence (Count One) and negligence per se (Count Two); "counts" against Glanbia for respondeat superior liability (Count Three), imputed liability under I.C. § 49-2417 (Count Four), and negligence (Count Five); and willful and reckless (Count Six) against both Defendants.

## LEGAL STANDARDS

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In considering a motion for summary judgment, the court must "view[ ] the facts in the non-moving party's favor." *Id.* To defeat a motion for summary judgment, the nonmoving party must present

**MEMORANDUM DECISION AND ORDER - 5**

evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor." *Id.* (citation omitted).

The trial court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party cannot simply rely on unsworn assertions or the pleadings to defeat a motion for summary judgment; rather, the nonmoving party must set forth the "specific facts," supported by evidence, with "reasonable particularity" that preclude summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

Where parties file cross-motions for summary judgment on the same issue, the Court considers each motion on its own merits and reviews all evidence submitted by both parties. *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). Cross-motions do not by themselves establish that no genuine dispute of material fact exists. *Id.*

**ANALYSIS**

A.      **Nature of Glanbia's Liability**

  1.      **Vicarious Liability Under Doctrine of Respondeat Superior**

Both parties raise arguments on summary judgment regarding the nature of Glanbia's liability. Defendants admit that Glanbia employed Rodriguez and that he was acting within the course and scope of his employment at the time of the collision (Dkt. 45-5 at 2; Dkt. 53 at 1; Dkt. 61 at 3). Based on this admission, Glanbia is vicariously liable for Rodriguez's tortious conduct under the doctrine of respondeat superior. That doctrine provides that an employer is responsible for the torts of its employee when those torts are committed within the scope of the employee's employment. *Rausch v. Pocatello Lumber Co., Inc.*, 14 P.3d 1074, 1077-78 (Idaho Ct.

**MEMORANDUM DECISION AND ORDER - 6**

App. 2000); *see also Teurlings v. Larson*, 320 P.3d 1224, 1233 (Idaho 2014) ("Under the doctrine of respondeat superior, an employer is liable for the tortious conduct of an employee committed within the scope of employment.") (quotation omitted). Glanbia's admission that it is vicariously liable for Rodriguez's alleged conduct precludes Klimenko's independent negligence claim against Glanbia, as discussed below.

### 2.    Negligent Hiring, Training, and Supervision Against Glanbia

Klimenko alleges Glanbia negligently hired, trained, and supervised Rodriguez (Dkt. 1 at ¶¶ 28-30). Because Glanbia is undisputedly vicariously liable for Rodriguez's alleged negligence, Defendants argue they are entitled to summary judgment on Klimenko's independent negligence claim against Glanbia and rely on *Wise v. Fiberglass Sys., Inc.*, 718 P.2d 1178 (Idaho 1986), and *Kucirek for Est. & Heirs of Grossklaus v. Jared*, No. 3:17-CV-00028-CWD, 2018 WL 4224847, at *7–8 (D. Idaho Sept. 5, 2018) (Dkt. 61 at 4).

In *Wise*, the Idaho Supreme Court addressed the propriety of allowing a plaintiff to proceed against a party on independent negligence theories once that party had admitted vicarious liability under the doctrine of respondeat superior. 718 P.2d 1178. The Court held that the district court did not err by refusing to allow the plaintiff to pursue his independent negligence theories against the tortfeasor's employer once the employer had admitted vicarious liability. *Id.* The Court's rationale was that it would be a waste of time and judicial resources to allow the plaintiff to proceed independently against the employer because the same result would occur; no additional liability on behalf of the employer would result; and the jury's attention would be distracted from the contested issue. *Id.* at 1181-82; *see also Kucirek*, 2018 WL 4224847 at *7-8 (ruling that because employer admitted liability under respondeat superior, plaintiff was prohibited from pursuing independent negligence claims against employer). The Court noted only two exceptions to its

holding—if a plaintiff was seeking punitive damages or if a defect in the entrusted vehicle caused the accident. *Wise*, 718 P.2d at 1181-82; *see also Al-Kindi v. Edwards Bros., Inc.,* No. CV03-459-E-LMB, 2005 WL 8165290, at *7 (D. Idaho Feb. 11, 2005) (citing *Wise* as majority rule and applying that rule).

Klimenko argues *Wise* does not apply because Glanbia has not admitted Rodriguez was negligent. But *Kucirek* rejects that distinction in materially analogous circumstances. There, the employer admitted the employee acted within the scope of employment but denied the employee was negligent. The court still applied *Wise* because the employer accepted that, if the employee's acts were found negligent or wrongful, the employer would be vicariously liable. *Kucirek*, 2018 WL 4224847, at *7–8. Further, the decision in *Wise* is not predicated on an admission of the employee's liability. In *Wise,* the employer admitted vicarious liability; regardless, the case proceeded to trial to determine the employee's negligence; and the district court, which was affirmed, refused to allow the plaintiff to present evidence of alternative negligence theories against the employer. 718 P.2d at 1181-82.

Moreover, Klimenko has not identified any separate conduct by Glanbia that would impose liability on Glanbia if the jury found Rodriguez did not negligently cause the collision. Instead, Klimenko's theory is that Glanbia's hiring, training, supervision, or entrustment failures allowed Rodriguez to drive in a manner that caused the collision. In support, Klimenko primarily points to alleged gaps in Glanbia's pre-employment investigation and to testimony criticizing Glanbia's distracted-driving training and safety culture (Dkt. 67 at 5-7). At most, Klimenko's evidence supports the same theory underlying the negligence claim against Rodriguez: namely, he failed to keep a proper lookout, failed to react, or was inattentive. Because Glanbia has admitted vicarious liability for Rodriguez's negligence if the jury finds such negligence, and because the Court denies

**MEMORANDUM DECISION AND ORDER - 8**

Klimenko's motion to seek punitive damages (as discussed below), *Wise* bars Klimenko's separate negligence claim against Glanbia. Accordingly, the Court rules that Glanbia's vicarious liability for Rodriguez's negligent conduct is conclusively established.

**B.      Negligence Claims Against Rodriguez**

Both Klimenko and Defendants move for summary judgment on Klimenko's claims against Rodriguez for negligence (Count One) and negligence per se (Count Two). Although Klimenko purports to plead negligence and negligence per se as separate claims, negligence per se is simply a method of proving certain elements of negligence, not a separate claim allowing a separate recovery. *Yellowstone Log Homes, LLC v. City of Rigby*, 540 P.3d 990, 996 (Idaho 2023) (recognizing that "when a complaint alleges negligence and negligence per se, the latter is simply one manner of proving negligence").

**1.      Negligence Per Se**

Under Idaho law, a prima facie case for negligence requires proof of duty, breach, causation, and damages. *Fragnella v. Petrovich*, 281 P.3d 103, 108-09 (Idaho 2012). Negligence *per se* is simply one manner of proving a common law negligence claim by replacing the common law duty of ordinary care with a statutory or a regulatory duty of care. *Steed v. Grand Teton Council of the Boy Scouts of Am., Inc.*, 172 P.3d 1123, 1128 (Idaho 2007). Under a negligence per se theory, a court may adopt the requirements of a legislative enactment or an administrative regulation as the standard of conduct of a reasonable man. *O'Guin v. Bingham Cnty.*, 122 P.3d 308, 311 (Idaho 2005). Such authorities define the applicable standard of care owed, and a violation of a statute or regulation may constitute negligence *per se. Id.*.

Establishing negligence *per se* through a violation, however, only conclusively establishes the first two elements of a negligence cause of action. *Id.* In other words, "[n]egligence *per se*

lessens the plaintiff's burden only on the issue of the actor's departure from the standard of conduct required of a reasonable man" because "the elements of duty and breach are taken away from the jury." *Id.* (quotation omitted). The factual determination of proximate cause, however, is generally reserved for the trier of fact. *Ahles v. Tabor*, 34 P.3d 1076, 1078 (Idaho 2001), *abrogated by Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 265 P.3d 502 (Idaho 2011). Causation may be decided as a matter of law only when reasonable minds can reach one conclusion. *Fragnella*, 281 P.3d at 109-10.

To replace the common law duty under negligence per se, a statute or regulation must meet the following elements: (1) it must clearly define the required standard of conduct; (2) it must have been intended to prevent the type of harm the defendant's act or omission caused; (3) the plaintiff must be a member of the class of persons the statute or regulation was designed to protect; and (4) the violation must have been the proximate cause of the injury. *Ahles*, 34 P.3d at 1078.

Here, Klimenko alleges Rodriguez is negligent per se because he violated Idaho Code § 49-637 "by failing to properly maintain his lane of traffic" (Dkt. 1 at ¶ 19). Section 49-637 provides that "a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety." I.C. § 49-637(1). Klimenko, however, now concedes that Rodriguez did not fail to maintain his lane of traffic in violation of § 49-637 (Dkt. 67 at 8) ("Plaintiff does not contest that Mr. Rodriguiez did not violate § 49-637."). Accordingly, § 49-637 cannot be a basis to establish negligence per se.

Klimenko also asserts that he may establish negligence per se under § 49-1401(1) penalizing reckless driving; § 49-1401(3) penalizing the lesser included offense of inattentive

driving; and § 49-1401A, penalizing operation of a motor vehicle while using a cellphone.[2] The record, however, establishes that although Rodriguez was originally cited for reckless driving, he was not charged under § 49-1401(1); rather, he was charged with and pled guilty to inattentive driving under § 49-1401(3) (Dkt. 53 at ¶¶ 17-20). Further, law enforcement neither cited nor charged Rodriguez with using his cellphone under § 49-1401A. Accordingly, the Court considers only whether Klimenko may rely on § 49-1401(3) to establish negligence per se.

Section § 49-1401(3) provides that inattentive driving occurs when "the conduct of the operator has been inattentive, careless or imprudent, in light of the circumstances then existing." This statute meets the criteria for the application of negligence per se. *See O'Guin*, 122 P.3d at 311-12. It defines the applicable standard of care—inattentive, careless, or imprudent under the circumstances; the statute was intended to prevent the type of harm at issue here; Klimenko was within the protected class; and Rodriguez admits violating the statute. Because Rodriguez admitted he was inattentive, not careful, or imprudent by pleading guilty to a violation of § 49-1401(3), the duty and breach elements of a prima facie case of negligence have been established.

Defendants offer two arguments to the contrary. First, Defendants argue Klimenko cannot prove Rodriguez violated this statute because Rodriguez "testified in his deposition that he was not distracted" and that "he did not tell Trooper Hansen that he was distracted" (Dkt. 52 at 7). Rodriguez's post-plea denials, however, do not obviate the undisputed fact that he pleaded guilty to a charge of inattentive driving.

---

[2]    Klimenko only alleges negligence per se under § 49-1401(1) (Dkt. 1 at ¶ 18). The Idaho Supreme Court, however, has held that "a party is not required to specifically plead negligence per se in their complaint when alleging a cause of action for ordinary negligence." *Obendorf v. Terra Hug Spray Co.*, 188 P.3d 834, 840-41 (Idaho 2008).

**MEMORANDUM DECISION AND ORDER - 11**

Second, Defendants argue that Rodriguez's guilty plea under § 49-1401(3) is not "conclusive evidence of negligence per se" and "does not prove as a matter of law that he was negligent per se" (Dkt. 52 at 6). In support, they rely on *Beale v. Speck*, 903 P.2d 110, 119 (Idaho Ct. App. 1995). That case, however, does not stand for the proposition that a guilty plea is not conclusive of negligence *per se*; rather, *Beale* rules that a guilty plea is not "conclusive on the issue of *negligence*" which is distinct from the theory of negligence per se. *Id.* at 119 (emphasis added).

In *Beale*, Speck rear ended Beale and later pleaded guilty to a charge of following too closely. *Id.* at 114. The Idaho Court of Appeals considered whether Speck's guilty plea was admissible in a civil negligence action brought by Beale against Speck. The court held:

> [E]vidence of a party's plea of guilty to a traffic infraction is admissible against that party in a subsequent civil proceeding arising from the same occurrence as an admission by a party-opponent. However, *evidence of such a plea is not conclusive on the issue of negligence*; the party against whom the evidence is offered is free *to explain the circumstances under which the guilty plea was entered*, and the jury, as the trier of fact, shall determine the weight to which that explanation is entitled.

*Id.* at 119 (emphasis added).

Although the *Beale* court did not specifically address negligence per se, its decision is in accord with Idaho law regarding that theory. Evidence of a guilty plea under a statute meeting the criteria for negligence per se is only conclusive of the elements of breach and duty, and Idaho law provides that a defendant may rebut the presumption of negligence per se by showing an excuse or justification for the violation of a statute. *Nettleton v. Thompson*, 787 P.2d 294, 297 (Idaho Ct. App. 1990); *see also Teply v. Lincoln*, 874 P.2d 584, 586 (Idaho Ct. App. 1994) (providing for excuse of impossibility, lack of control, and emergency). Whether a plaintiff's explanation is a valid justification for the violation is a factual question for the jury. *Beale*, 903 P.2d at 119 (ruling jury determines "weight" of explanation). Further, although negligence per se establishes duty and breach as a matter of law, it does not establish proximate cause, which a plaintiff still must prove

MEMORANDUM DECISION AND ORDER - 12

and which is generally an issue for the trier of fact to resolve. *Ahles*, 34 P.3d at 1078 (ruling proximate cause is factual question); *Fragnella*, 281 P.3d at 109 (ruling court may only determine causation as matter of law if reasonable minds could not differ).

In summary, it is undisputed that Rodriguez pleaded guilty to § 49-1401(3), which meets the criteria for supplanting the duty of care in a negligence claim. As a result, the elements of duty and breach are established as a matter of law under the theory of negligence per se. Rodriguez, however, may admit evidence to excuse or justify his violation of § 49-1401(3). Further, Klimenko must still prove proximate cause to establish negligence. Accordingly, the Court denies both Defendants and Klimenko summary judgment on Klimenko's negligence claim, despite its conclusion that the elements of duty and breach have been established under the theory of negligence per se.

### 2. Negligence

Defendants move for summary judgment on Klimenko's claim, arguing that Klimenko, not Rodriguez, proximately caused the collision by "stopping his vehicle in the middle of a dark stretch of rural I-84 (Dkt. 61 at 6). To prevail on this argument as a matter of law, Defendants would have to show that reasonable minds could not differ that Klimenko's conduct was the sole cause of the collision. *See Fragnella*, 281 P.3d at 109 (ruling court may only determine causation as a matter of law if reasonable minds could not differ). By the time of their summary judgment motion, however, Defendants had already admitted in response to Klimenko's summary judgment motion that "there is a question of fact as to whether Mr. Rodriguez's driving was a cause of the accident for several reasons" (Dkt. 52 at 6). In response, Klimenko notes that Defendants make several arguments which conflict with their summary judgment argument that the proximate cause of the collision is undisputed (Dkt. 67 at 2-3).

MEMORANDUM DECISION AND ORDER - 13

Because Defendants concede that there are triable factual issues regarding the collision's proximate cause, the Court declines to grant them summary judgment on Klimenko's negligence claims. Moreover, the factual issues are apparent from the parties' opposing arguments. For example, Defendants assert that Klimenko caused the collision because he was "stopped in the right hand lane of traffic" without hazard lights, turn signals, cones, or flares and created an "unexpected hazard" and because Rodriguez had only 9.33 seconds to take evasive action and was "unable to maneuver" around Klimenko's vehicle (Dkt. 61 at 9-10; Dkt. 66 at 4). Defendants also rely on the opinions of an ISP collision reconstructionist's opinion that Klimenko's parked vehicle was the primary cause and Cavanaugh's opinion that the collision was "unavoidable"(Dkt. 52 at 1).

Meanwhile, Klimenko notes that Rodriguez "admitted he was distracted"; "never touched the brakes, slowed down, or steered away"; and had a minimum of "9.33 seconds" to "recognize" Klimenko's vehicle (Dkt. 67 at 9-10; Dkt. 48 at 2). Also, contrary to Cavanaugh's opinion that the collision was unavoidable, the evidence shows that other vehicles were able to avoid Klimenko's stopped vehicle. Further, Cavanaugh admitted a "reasonably prudent driver would have slowed down" (Dkt. 67 at 9).

Based on this record, the Court finds that there are genuine disputed issues of material fact for trial regarding what proximately caused the collision. These issues raise questions of comparative fault for the jury to resolve. *See* Idaho Code § 6-801 (abolishing contributory negligence and providing for comparative fault allocation). The Court cannot conclude that no reasonable minds would differ regarding the allocation of fault between Klimenko and Rodriguez for causing the collision.

Defendants' reliance on *Fragnella* does not require a different result. In *Fragnella*, the Idaho Supreme Court affirmed summary judgment where the plaintiffs failed to present

MEMORANDUM DECISION AND ORDER - 14

admissible, nonspeculative evidence connecting the defendant driver's alleged conduct to the collision. 281 P.3d at 108-12. Here, the record contains both direct and circumstantial evidence from which a jury could find that Rodriguez's inattention, failure to brake, failure to steer, or failure to timely perceive a visible hazard was a proximate cause of at least some portion of the collision. A jury could also accept Defendants' contrary theory that the collision was unavoidable and that Klimenko's stopped vehicle was the sole cause. For these reasons, the Court denies Defendants summary judgment on Klimenko's negligence claim against Rodriguez.

### 3.      Willful or Reckless Conduct

Defendants also move for summary judgment on Klimenko's Count Six, entitled "Willful and Reckless." There is no independent claim for relief for willful and reckless conduct. Under Idaho Code § 6-1603, however, the statutory cap on a plaintiff's recovery of noneconomic damages is inapplicable if the cause of action arises out of a tortfeasor's willful or reckless misconduct. I.C. § 6-1603(4)(a). The Court construes Defendants' motion as seeking a conclusion that, as a matter of law, Rodriguez's conduct was neither willful nor reckless for purposes of § 6-1603.

The Court declines to grant Defendants summary judgment on this issue. A finding of willful or reckless conduct requires more than ordinary negligence. Whether conduct is willful or reckless is assessed under an objective standard and requires that the actor knew or should have known his conduct created an unreasonable risk of harm and involved a high degree of probability that harm would result. *Hennefer v. Blaine Cnty. Sch. Dist.*, 346 P.3d 259, 266 (Idaho 2015); *Carrillo v. Boise Tire Co.*, 274 P.3d 1256, 1266–67 (Idaho 2012).

Viewing the record in Klimenko's favor, the Court concludes a reasonable jury could find Rodriguez was willful or reckless because he approached a visible roadway hazard, failed to brake

**MEMORANDUM DECISION AND ORDER - 15**

or steer away, was reaching for a water bottle or otherwise distracted, and failed to react to a stopped or slow-moving vehicle, despite that other drivers avoided it (Dkt. 53 at 3-7). At the same time, a jury could accept Defendants' evidence that the collision was unavoidable and that Rodriguez did not act willfully or recklessly. The Court cannot resolve these disputed factual issues on summary judgment.[3]

## C.    Klimenko's Motion for Spoliation Sanctions

Klimenko moves for spoliation sanctions based on the unavailability of electronically stored information (ESI) from Rodriguez's personal cellphone. Klimenko claims Defendants spoliated Rodriguez's phone. Although Klimenko refers generally to the phone, the relevant evidentiary information is the phone's ESI, which may have been recoverable, including any application usage, text messaging, screen activity, or other non-call activities occurring at or near the time of the collision.

### 1.    Discovery Background

After the collision, Klimenko's counsel sent Glanbia preservation letters in August 2023 requesting, among other things, that the "driver's physical cellphone" be preserved (Dkt. 45-1 at 2, 5, 8). Later, Klimenko filed this action in January 2024 (Dkt. 1). In response, Defendants retained the same counsel who answered the complaint on their behalf and have represented both Defendants throughout the course of this litigation, including during discovery (*see, e.g.*, Dkts. 9, 45-2). In March 2024, the parties submitted a stipulated discovery plan in which Defendants agreed to preserve any phone, specifically including "for the driver" (Dkt. 12 at 2).

---

[3]    This ruling comports with the Court's denial of Klimenko's motion to state a claim for punitive damages. Klimenko's willful or reckless theory is tested at summary judgment under Rule 56. Meanwhile, Idaho Code § 6-1604 governs his punitive damage motion and requires the Court to weigh the evidence.

MEMORANDUM DECISION AND ORDER - 16

Thereafter, Klimenko propounded discovery requests to Glanbia seeking materials related to Rodriguez's cellphone usage, and in July 16, 2024, Glanbia responded that it did "not have any communication devices including but not limited to a company cellphone" (Dkt. 45-2 at 42). Further, Glanbia denied requests for admission that at the time of the collision, Rodriguez was on his phone, manipulating his phone, looking at his phone, holding his phone, text messaging, or using social media (*id.* at 9-10).

On July 31, 2024, Klimenko deposed Rodriguez who testified that his personal cellphone was in the truck on the night of the collision; the phone was in a box in the truck console; it was not in his hand at the time of the collision; and he did not send or receive text messages or emails while driving that day (Dkt. 45-3 at 45:16-46:7; *id.* at 46:4-19). Rodriguez also testified that he had used his phone for a call with "Cruz," but that he was not on the call at the time of the collision and had been off the call for "[p]robably 20, 30 minutes" before the collision (*id.* at 46:20-47:13). To the contrary, however, the phone's toll records show that the call with Cruz ended at 11:13:13 p.m.—less than two minutes before the ISP report and Defendants' reconstruction report state the collision occurred (Dkt. 45-11 at 2; Dkt. 45-12 at 12).

In March 2025, Klimenko propounded discovery to Rodriguez inquiring whether he was using his "mobile device" at the time of the collision and whether he was still in possession of that device (Dkt. 45-6). Rodriguez responded that he was "streaming music" from his cellphone at the time of the collision but was not "using a mobile device for any other reason or looking at its screen" and that he sold the phone in November 2024 (*id.*). Klimenko then propounded additional discovery to Rodriguez inquiring to whom he sold the phone, and Rodriguez responded that he did "not know the individual's name, address, or phone number"(Dkt. 45-7 at 2). He also stated that he did not know whether data had been deleted from the phone before it was sold but that he "tried

**MEMORANDUM DECISION AND ORDER - 17**

to delete all [his] personal information from the phone" (*id.* at 2). Neither Rodriguez nor Glanbia ever produced any ESI from the phone (Dkt. 45-7 at 2).

Klimenko's cellular-analysis expert, Joshua Lorencz, testified the relevant window for further cellphone analysis was the period between the end of the call with Cruz and the collision (Dkt. 55-2 at 30:7-31:14). Lorencz understood Rodriguez's phone was no longer available for inspection and testified the phone could have contained additional evidence of usage not shown in the phone records (*id.* at 32:5-13). At the same time, Lorencz testified that the records do not show Rodriguez was "looking at or observing" the device and that he agreed no hypothetical ESI information would confirm Rodriguez was looking at his phone at the time of the collision (Dkt. 55-2 at 35:12-17, 70:4-10, 74:17-75:7).

The parties dispute whether the footage from Rodriguez's dash-camera shows evidence of his cellphone use. Stidham's report includes still photographs of the footage and states that, after the crash, the reflection in the windshield shows an electronic device approximately the size of a cellphone (Dkt. 51-3 at 4-5). Stidham further states Rodriguez's phone is seen in the footage flying after impact; the screen was open; and it appears Rodriguez was texting while operating a commercial motor vehicle (*id.* at 43). Defendants dispute that inference and rely on Stidham's testimony that "all you see is the illuminated screen in that windshield" (Dkt. 60-4 at 65:8-9).

### 2.    Legal Standard

"Spoliation of evidence is the destruction or significant alteration of evidence, or the failure to properly preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Sanders v. Univ. of Idaho, Coll. of L.*, 634 F. Supp. 3d 936, 940 (D. Idaho 2022) (cleaned up). "A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Glover v.*

**MEMORANDUM DECISION AND ORDER - 18**

*BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). District courts have "broad discretionary power to permit a jury to draw an adverse inference from the destruction or spoliation against the party or witness responsible for that behavior." *Id.* When considering whether to impose a spoliation sanction, judges generally consider three factors: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party." *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994).

Rule 37(e) of the Federal Rules of Civil Procedure establishes the standard for determining sanctions for spoliation of ESI. Under Rule 37(e), a party seeking sanctions for the loss of ESI must show: (1) there was a duty to preserve the information; (2) the party who lost the information failed to take reasonable steps to preserve it; and (3) the information cannot be restored or replaced. *See* Fed. R. Civ. P. 37(e)(1).

If a party makes a threshold showing of spoliation, Rule 37(e) provides for two levels of sanctions. Under Rule 37(e)(1), if a court finds the offending party had a duty to preserve the ESI and the party's failure to do so prejudiced the moving party, the court "may order measures no greater than necessary to cure the prejudice." If the court further finds, however, that the offending party "acted with the intent to deprive another party of the information's use in the litigation," the court may instruct the jury to presume the lost information was unfavorable to the offending party, dismiss the action, or enter a default judgment. Fed. R. Civ. P. 37(e)(2).

### 3.   Showing of Spoliation

Rule 37(e) incorporates the common-law "duty to preserve relevant information when litigation is reasonably foreseeable." *Id.* A party must preserve evidence it knows or should know is relevant to a claim or defense of any party or may lead to the discovery of relevant evidence.

**MEMORANDUM DECISION AND ORDER - 19**

*Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1051 (S.D. Cal. 2015). "The duty to preserve relevant evidence commences prior to litigation once a defendant reasonably anticipates an action may be forthcoming." *Sanders*, 634 F. Supp. 3d at 940.

Here, Defendants had a duty to preserve the ESI on Rodriguez's cellphone. This litigation was reasonably foreseeable, particularly given the nature of the incident. Moreover, Klimenko asked Glanbia to preserve the ESI from Rodriguez's phone and both Defendants—who are represented by the same counsel—agreed to preserve that information in their stipulated discovery plan (Dkt. 12; *see also* Dkt. 13) (order adopting parties discovery plan).

Further, Rodriguez's cellphone likely contained relevant ESI evidence. Rodriguez's attention immediately before the collision is disputed. For example, although he testified that he had a phone call with Cruz "[p]robably 20, 30 minutes" before the collision (Dkt. 45-3 at 46:20-47:13), his phone records show a call beginning at 10:51:20 p.m. and ending at 11:13:13 p.m. about two minutes before the collision (Dkt. 45-11 at 2). This disparity calls into question Rodriguez's credibility about his phone usage. Likewise that the dashcam footage shows what appears to be a cellphone with an active screen at the time of the collision potentially undermines Rodriguez's credibility. That Rodriguez testified during his deposition that he was not distracted does not resolve the issue; rather it makes the ESI, which might have shown his usage, more relevant, not less. Likewise, that ISP did not collect Rodriguez's phone and that Defendants' experts have opined the collision was unavoidable does not diminish the relevance of the phone's ESI, as Defendants suggest.

Defendants provide no explanation about what reasonable steps they took to preserve the cellphone's ESI. Instead, they criticize Klimenko's discovery efforts, including that he asked Glanbia about the phone in discovery, did not demand the phone during Rodriguez's deposition,

**MEMORANDUM DECISION AND ORDER - 20**

and waited until March 2025 to request the phone from Rodriguez directly. Regardless, *both* Defendants agreed to preserve the phone's ESI, and their counsel knew about that agreement. Finally, Defendants do not dispute that the phone's ESI cannot be replaced or restored. Although they complain that Klimenko should have moved earlier on the spoliation issue, they offer no explanation how that would have cured the issue or how they have been prejudiced by the timing of Klimenko's motion.

Finally, the Court concludes Klimenko is prejudiced by Defendants' failure to preserve the phone's ESI. The missing ESI bears directly on both parties' theory of the case—i.e., whether Rodriguez was distracted or whether the collision was unavoidable. Further, the available evidence does not replace the missing ESI. Although the phone records show Rodriguez's call activity, they do not show, for example, whether he was using the phone for other purposes—like texting and social media (Dkt. 55-2 at 35:12-17).

The Court concludes, however, that Klimenko has not shown that Defendants "acted with the intent to deprive" him of the use of the cellphone's ESI. That showing is necessary for an adverse inference jury instruction. Fed. R. Civ. P. 37(e)(2). "[C]ourts have found that a party's conduct satisfies Rule 37(e)(2)'s intent requirement when the evidence shows or it is reasonable to infer, that the party purposefully destroyed evidence to avoid its litigation obligations." *Porter v. City & Cnty. of San Francisco*, No. 16-CV-03771-CW(DMR), 2018 WL 4215602, at *3 (N.D. Cal. Sept. 5, 2018); *see also hiQ Labs v. LinkedIn Corp.*, 639 F. Supp. 3d 944, 977 (N.D. Cal. 2022) (explaining evidence of "a specific intent to deprive, rather than a mere knowing failure to preserve" is required for imposition of sanctions under Rule 37(e)(2)). However, "[n]egligence—even gross negligence—in failing to retain relevant evidence is not sufficient to

**MEMORANDUM DECISION AND ORDER - 21**

support an adverse inference under Rule 37(e)(2)." *Meta Platforms, Inc. v. BrandTotal Ltd*, 605 F. Supp. 3d 1218, 1238 (N.D. Cal. 2022).

Here, Klimenko has not presented any evidence of a specific intent by either Defendant to destroy the cellphone's ESI. Glanbia did not possess the phone, and Rodriguez did not sell it until several months after his deposition where he answered questions under oath about his phone usage. These circumstances do not excuse the loss, but they also do not support the intent finding required for severe Rule 37(e)(2) sanctions. Accordingly, the Court will not enter default judgment against Defendants, strike their  defenses, or give the adverse jury instruction which Klimenko proposes (Dkt. 45 at 12).

Because Klimenko is prejudiced by the spoliated ESI, however, the Court may order a measure no greater than necessary to cure the prejudice and has significant discretion in determining what satisfies this standard. Fed. R. Civ. P. 37(e)(1); *id.* advisory committee's note to the 2015 Amendment. Presently, the Court anticipates instructing the jury that Klimenko requested that Glanbia preserve the cellphone before the litigation began; both Defendants specifically agreed to preserve the phone's ESI; the Court ordered its preservation by adopting the parties' stipulation; but Rodriguez nonetheless sold the phone without preserving the ESI before the case's conclusion. Based on this conduct, the jury may consider whether Rodriguez was using his cellphone at or near the time of the collision despite that there is no ESI to confirm that fact.

**D.      Klimenko's Motion to Amend to Add Punitive Damages**

Klimenko's motion for leave to amend to allege a punitive damages claim is governed by Idaho Code § 6-1604. That statute provides that a plaintiff may not claim punitive damages in the initial complaint. Instead, the plaintiff must seek to "amend the pleadings to include a prayer for relief seeking punitive damages." Idaho Code § 6-1604(2). The Court should permit such an

amendment only if, "after weighing the evidence presented, the court concludes that the moving party has established . . . a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages." *Id*.

In other words, the Court may grant leave to amend only when there is a reasonable probability that the evidence submitted is admissible at trial and sufficient to support an award of punitive damages. *Davis v. Blast Props., Inc.*, 551 P.3d 706, 712 (Idaho 2024). In this context, sufficient means that the claim giving rise to the request for punitive damages must be legally cognizable and the evidence presented must be substantial. *Id.* Ultimately, the decision whether to permit a plaintiff to add a claim for punitive damages rests within the trial court's sound discretion. *Groenig v. Safeco Ins. Co. of Am.*, No. 1:20-CV-00538-BLW, 2023 WL 6162937, at *10 (D. Idaho Sept. 21, 2023) (citing *Manning v. Twin Falls Clinic & Hosp., Inc.*, 830 P.2d 1185, 1190 (Idaho 1992)).

Klimenko's motion under Idaho Code § 6-1604(2) for leave to amend his complaint to add a claim for punitive damages requires the Court to decide whether, after weighing the evidence presented, Klimenko has established a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages. To recover punitive damages, Klimenko must prove by clear and convincing evidence that Defendants acted with oppressive, fraudulent, malicious, or outrageous conduct. Idaho Code § 6-1604(1). The Idaho Supreme Court has clarified that, at the amendment stage, courts assess whether the evidence submitted is admissible and sufficient to support punitive damages, where "sufficient" means the claim is legally cognizable and supported

by substantial evidence. *Davis*, 551 P.3d at 712; *Heit v. Livingston*, No. 2:23-CV-00507-BLW, 2025 WL 1796101, at *2 (D. Idaho June 30, 2025).[4]

That standard requires more than evidence of negligence, gross negligence, or even willful or reckless conduct in the abstract. To meet the standard, a plaintiff must present substantial evidence of both a bad act and a bad state of mind. *Davis v. Nevarez*, No. 3:07-CV-00427-EJL-LMB, 2009 WL 1532270, at *3-5 (D. Idaho May 29, 2009); *Todd v. Sullivan Constr. LLC*, 191 P.3d 196, 201 (Idaho 2008). A bad act is an extreme deviation from reasonable standards of conduct performed with an understanding of, or disregard for, its likely consequences. *Seiniger L. Off., P.A. v. N. Pac. Ins. Co.*, 178 P.3d 606, 615 (Idaho 2008). The required bad state of mind is an extremely harmful state of mind, reflected in oppressive, fraudulent, malicious, or outrageous conduct. Idaho Code § 6-1604(1); *Does I-XIX v. Boy Scouts of Am.*, No. 1:13-cv-00275-BLW, 2019 WL 1676212, at *1 (D. Idaho Apr. 17, 2019).

Klimenko argues Rodriguez's conduct was outrageous because he drove a 129,000-pound commercial truck at highway speed; had a visible hazard in front of him for approximately ten seconds; never slowed, braked, or steered before impact; and was distracted by either a water bottle, a cellphone, or something else (Dkt. 58 at 2, 6-10; Dkt. 69 at 2-5). Klimenko also relies on evidence that another Glanbia driver, Mark Huber, encountered Klimenko's vehicle shortly before the collision and avoided it (Dkt. 58 at 7-8; Dkt. 69 at 5-7).

---

[4]     Defendants challenge several portions of Klimenko's punitive-damages evidence as speculative or inadmissible, including Klimenko's reliance on the police-report narrative, Hansen's charging decision, and inferences from the dash-camera footage. However, even considering all the evidence in the record in Klimenko's favor—including Rodriguez's own statements, Hansen's testimony, the guilty plea, the dash-camera footage, and the expert opinions—Klimenko has not shown a reasonable likelihood of proving facts sufficient to support punitive damages.

MEMORANDUM DECISION AND ORDER - 24

Klimenko's most persuasive argument is that Rodriguez had roughly ten seconds to see Klimenko's vehicle, was distracted, and never reacted. These facts do not show the required bad state of mind, however. Indeed, Klimenko's explanation that Rodriguez "never saw Klimenko's vehicle before hitting it" supports this conclusion (Dkt. 69 at 2). If the jury accepts that view, Rodriguez may have been inattentive, careless, or even grossly negligent. But there is no substantial evidence in the record of a conscious disregard, outrageousness, or extremely harmful state of mind.

Klimenko's reliance on Rodriguez's training and the danger of commercial trucks does not cure that gap. Rodriguez knew commercial drivers must keep a proper lookout, scan the roadway, and give full attention to safe driving (Dkt. 53 at 5-7). Commercial trucks also pose obvious risks when operated inattentively because they are heavy and moving quickly. But if that generalized knowledge were enough, then nearly any serious commercial-truck collision involving inattention could become a punitive-damages case. Idaho's standard is narrower. It requires substantial evidence that this Defendant's conduct was accompanied by an extremely harmful state of mind. Klimenko has not made that showing.

Klimenko's punitive-damages theory against Glanbia is even weaker. Klimenko relies primarily on Glanbia's post-accident assessment that Rodriguez did nothing wrong and Glanbia's decision not to discipline or retrain him (Dkt. 69 at 9). That evidence may support Klimenko's criticism of Glanbia's safety practices, but these facts do not establish a bad act or bad state of mind. Klimenko has not identified substantial evidence that, before the collision, Glanbia knew Rodriguez posed a specific risk, consciously disregarded that risk, or otherwise engaged in conduct independently satisfying Idaho's punitive-damages standard. *See Nevarez*, 2009 WL 1532270, at *3-5.

**MEMORANDUM DECISION AND ORDER - 25**

*Nevarez* illustrates the quantum of evidence necessary to state a punitive damages claim against the employer of a commercial driver. *Id*. There, the court allowed punitive damages where the company hired a driver despite numerous pre-accident warning signs, including that the driver had disclosed his schizophrenia and bipolar disorders, his use of four psychotropic medications, only a six-month medical certification, inconsistent employment-history information, five preventable accidents over four years, and a recent commercial-vehicle rollover with a speeding violation. Further, the company never told the driver's direct supervisor critical safety information and failed to act in the face of twenty-four log violations, thirteen instances of speeding, and a negative road report that the driver was crossing a double-yellow line and running other drivers off the road. *Id*. at *5-6. The court emphasized that the absence of a specific regulation prohibiting the hire was not dispositive because the cumulative warning signs could show conduct falling so far below the standard of care as to warrant punitive damages. *Id*. at *9-10.

The record here is not comparable to *Nevarez*. Klimenko has not shown prior similar incidents, repeated speed or log violations, ignored safety reports, known disqualifying safety risks, or employer knowledge that Rodriguez posed an obvious danger before the crash. Nor does the dashcam evidence conclusively establish that Rodriguez was holding, looking at, or manipulating his cellphone at the time of the collision.

Finally, even assuming a jury could conclude the illuminated screen was a phone, could disbelieve Rodriguez's testimony about how long before the collision his phone call ended, and could find the illuminated-screen evidence inconsistent with his account of the phone's location, that evidence does not supply substantial evidence of an extremely harmful state of mind at the time of the collision

**MEMORANDUM DECISION AND ORDER - 26**

Based on this record, Klimenko has not shown a reasonable likelihood of proving, by clear and convincing evidence, the extreme deviation and extremely harmful state of mind required under Idaho Code § 6-1604 and *Nevarez*, 2009 WL 1532270 at *7. Accordingly, the Court denies Klimenko's motion to amend his complaint to add a punitive damage claim.

**ORDER**

1. Plaintiff's Motion for Spoliation Sanctions (Dkt. 45) is **GRANTED**. Plaintiff is entitled to a limited curative instruction under Rule 37(e)(1), which the Court will finalize after entertaining argument about the exact wording of an appropriate instruction during the pretrial proceedings.

2. Plaintiff's Motion for Partial Summary Judgment (Dkt. 46) is **DENIED** as to Plaintiff's claim against Rodriguez for Negligence (Count I) and is **GRANTED** in that the Court rules Glanbia is vicariously liable for Rodriguez's alleged negligence under the theory of respondeat superior and that Rodriguez's guilty plea to a violation of Idaho Code § 49-4101(3) establishes the elements of duty and breach for purposes of Negligence (Count I)

3. Defendants' Motion for Summary Judgment (Dkt. 59) is **GRANTED** as to Plaintiff's claim for Negligence against Glanbia (Count Five) which is dismissed, and it is **DENIED** in all other respects.

4. Plaintiff's Motion to Amend Complaint to Add Claim for Punitive Damages (Dkt. 58) is **DENIED**.

MEMORANDUM DECISION AND ORDER - 27

5.  The parties agreed to mediate this case and the Court adopted that stipulation (*see, e.g.*, Dkt. 41). Accordingly, the parties shall provide a status report within **thirty (30) days** after the entry of this Memorandum Decision regarding their efforts to mediate this case. Thereafter, the Court will set a trial scheduling conference if necessary.

DATED: July 20, 2026

Amanda K. Brailsford
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 28